UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MICHAEL MARTIN                                    CIVIL ACTION

VERSUS                                            NO. 16-6888

W.C. McCAIN, WARDEN                               SECTION "J"(2)

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C.A. § 2254(e)(2).[1] For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

## FACTS AND PROCEDURAL HISTORY

(1)    State Court Proceedings

On March 14, 2011, Martin was charged by bill of information with possession with intent to distribute cocaine in violation of La. Rev. Stat. § 40:967 (A).[2] The facts

---

[1] Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination. According to Section 2254(e)(2), the district court may hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

[2] St. Rec. Vol. 1, p. 19; Bill of Information, 3/14/11.

established at trial were summarized by the Louisiana Fifth Circuit Court of Appeal as

follows:

> In the evening of February 17, 2011, Officer Brandon Leblanc of the Gretna Police Department initiated a traffic stop near the intersection of Franklin Avenue and Burmaster Street in Gretna, Louisiana. The officer observed a vehicle disregard a red stop light and make a left turn. With lights and sirens, the officer pulled the vehicle over without incident. Defendant was the sole occupant of the vehicle. The officer obtained defendant's proof of insurance, vehicle registration, and driver's license, ran the information and determined that defendant had three open attachments. The officer then advised defendant of his rights, arrested him for the attachments, and placed him in the rear of his police unit. Defendant's car was still running, so the officer turned off the ignition and retrieved the keys. While doing so, with the aid of a flashlight, he observed in plain view on the driver's side floorboard a pack of cigarettes and underneath it a clear bag containing smaller bags. The officer suspected this was contraband, so he retrieved the bag and field-tested it for cocaine, which yielded a positive result. No money was recovered from defendant or his vehicle.
>
> Soon thereafter, Detective Alfred Disler and Lieutenant Scott Vincent of the Gretna Police Department arrived on the scene. Detective Disler advised defendant of his rights, which defendant indicated he understood and wished to waive. Defendant was then transported to the police station, where he was again advised of his rights, executed a rights of arrestee form, waived his rights, and gave a taped statement. In his statement, defendant admitted that the cocaine found was his, that he used cocaine daily, but that he did not sell it. He also stated that the vehicle he was driving when he was pulled over belonged to him.
>
> A scientific analysis report, prepared by the Jefferson Parish Sheriff's Office Crime Laboratory, indicated that the narcotics seized from defendant consisted of one bag containing 14 bags of an off-white powder. The powder tested positive for cocaine and had a gross weight of 6.15 grams.
>
> Lieutenant Daniel Jewell of the Jefferson Parish Sheriff's Office, an expert in the field of packaging, handling, and valuing street level narcotics, testified that three factors are considered when attempting to determine if a quantity of narcotics is being distributed or consumed personally: value, quantity, and packaging. He further testified that narcotics for personal use were usually bought in bulk, not divided into smaller amounts. Lieutenant Jewell explained that 6.15 grams of cocaine in bulk has a value of about $300 to $400. It was his opinion that 6.15 grams of cocaine divided into 14 smaller units would have a value of about $50 per unit, or about $700 collectively. Lieutenant Jewell asserted that it was

inconsistent with personal use for the narcotics to be broken down into smaller units.

<u>State v. Martin</u>, 121 So.3d 170, 173 (La. App 5th Cir. (2013).[3]

On May 26, 2011, a jury found Martin guilty as charged on all counts.[4]  After denying Martin's motion for new trial,[5] the state trial court sentenced him to 15 years at hard labor, with the first two years without benefit of probation, parole, or suspension of sentence.[6]  On that same date, the State filed a multiple offender bill of information in open court, charging Martin as a second felony offender.[7]  On June 20, 2011, he  pled guilty to being a second felony offender, and the court sentenced him to 15 years at hard labor.[8]

Two direct appeals followed.  The first was dismissed as untimely, but the appellate court instructed Martin that he could seek reinstatement of his appellate rights in an application for post-conviction relief seeking an out-of-time appeal.[9] Martin's subsequent application for post-conviction relief seeking an out-of-time appeal was

---

[3] St. Rec. Vol. 4, pp. 780-81.

[4] St. Rec. Vol. 1, pp. 53, 65.

[5] St. Rec. Vol. 1, p. 79.

[6] St. Rec. Vol. 1, p. 81.

[7] <u>Id.</u>

[8] St. Rec. Vol. 1, pp. 84, 85.

[9] <u>State v. Martin</u>, 101 So.3d 1004, 1006 (La. App. 5th Cir. 2012); St. Rec. Vol. 2, pp. 577-582.

granted on December 18, 2012,[10] and his second appeal commenced.  On June 27, 2013, the Louisiana Fifth Circuit affirmed Martin's conviction and sentence.[11]

On July 16, 2013, Martin filed a timely writ application with the Louisiana Supreme Court.[12]  On February 7, 2014, the state supreme court denied relief.[13]  Martin did not file a petition for writ of certiorari in the United States Supreme Court.  Thus, his conviction became final ninety (90) days later, on May 8, 2014, when he did not file a writ application with the United States Supreme Court.  Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1); Burton v. Stewart, 549 U.S. 147 (2007) (in a criminal case, judgment includes conviction and sentence, therefore the AEDPA "limitations period did not begin until both his conviction and sentence 'became final by the conclusion of direct review or the expiration of the time for seeking such review,'" citing 28 U.S.C. § 2244(d)(1)(A)).

---

[10] St. Rec. Vol. 4, pp. 740-754, 755.

[11] State v. Martin, 121 So.3d 170 (La. App. 5th Cir. 6/27/13); St. Rec. Vol. 4, pp. 778-788.

[12] St. Rec. Vol. 6, pp. 875-92, La. S. Ct. Writ Application, 13-KO-1744, 7/16/13.

[13] State v. Martin, 131 So.3d 861 (La. 2/07/14); St. Rec. Vol. 6, p. 893.

Martin signed and dated a Uniform Application for Post-Conviction Relief on July 11, 2014, and filed it in the state trial court.[14]  After the state trial court denied relief,[15] Martin filed a timely writ application in the Louisiana Fifth Circuit Court,[16] which denied relief on February 19, 2015.[17]  His timely related writ application in the Louisiana Supreme Court[18] was denied on January 15, 2016.[19]

(2)    Federal Habeas Petition

On May 13, 2016, the clerk of court filed Martin's federal habeas corpus petition in this court.  Martin dated and signed it on May 11, 2016.  The petition asserts the following two claims for relief:

> (1) Petitioner was deprived of a right to fair trial as a result of ineffective assistance of trial counsel when counsel failed to object to the erroneous reasonable doubt instruction.
>
> (2)  Petitioner was deprived of a fair and impartial trial as a result of ineffective assistance of counsel, where counsel failed to request for (sic) an independent evaluation of the petitioner's daily drug usage.[20]

---

[14] St. Rec. Vol. 1, pp. 201-14.

[15] St. Rec. Vol. 1, pp. 239-43.

[16] La. 5th Cir. Writ Application, Case No. 14-KH-859, 11/16/14; St. Rec. Vol. 5, pp. 791-872.

[17] State v. Martin, 14-859 (La. App. 5th Cir. 2/19/15 (unpub. order)); St. Rec. Vol. 1, p. 254; Vol. 5, p. 873.

[18] La. S. Ct. Writ Application, 15-KH-554; St. Rec. Vol. 1, p. 256; Vol 6, p. 894.

[19] State v. Martin, 15-554 (La. 1/15/16); 182 So.3d 958; St. Rec. Vol. 6, p. 925-26.

[20] Record Doc. No. 1 (Petition at pp. 4, 6)

The State filed a response in opposition to the petition, conceding timeliness but arguing that the claims were not exhausted in the state courts in a procedurally proper manner and that they are otherwise without merit.  Record Doc. No. 14.

ANALYSIS

(1)   <u>Standards of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") effected a comprehensive overhaul of federal habeas corpus legislation, including 28 U.S.C. § 2254.  Pub. L. No. 104-132, 110 Stat. 1214.  The AEDPA went into effect on April 24, 1996[21] and applies to the instant petition, which is deemed filed on May 11, 2016.

Amended subsections 2254(d)(1) and (d)(2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law.[22]  As to questions of fact, the amended statute "permits federal court relief if the state court adjudication of the claim 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence.'"  <u>Drinkard</u>, 97 F.3d at 767 (citing 28

---

[21] The AEDPA, which was signed into law on April 24, 1996, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. <u>United States v. Sherrod</u>, 964 F.2d 1501, 1505 (5th Cir. 1992).

[22] <u>Drinkard v. Johnson</u>, 97 F.3d 751, 767 (5th Cir. 1996), <u>cert. denied</u>, 117 S. Ct. 1114 (1997), <u>overruled in part by Lindh v. Murphy</u>, 117 S. Ct. 2059, 2068 (1997). The Supreme Court in <u>Lindh</u> overruled the Fifth Circuit's conclusion in <u>Drinkard</u> that the provisions of the AEDPA could be applied retroactively to cases pending on its effective date. However, the standards of review set forth in <u>Drinkard</u> for claims subject to the AEDPA were not addressed by <u>Lindh</u> and remain the law of this circuit to the extent they do not conflict with the holding in <u>Lindh</u>. <u>Green v. Johnson</u>, 116 F.3d 1115, 1120 n.2 (5th Cir. 1997). Because the instant petition is subject to the AEDPA, the new standards apply to the petition.

6

U.S.C. § 2254(d)(2)).  "[W]hen reviewing a mixed question of law and fact, a federal court may grant habeas relief only if it determines that the state court decision rested on 'an unreasonable application of[ ] clearly established Federal law, as determined by the Supreme Court,' to the facts of the case."  Id. at 768 (quoting 28 U.S.C. § 2254(d)(1)). The "new standard of review for mixed questions of law and fact demands considerable deference to the decisions of state courts, akin to the 'clearly erroneous' standard." Carter, 110 F.3d at 1108.  For mixed questions of fact and law, "an application of law to facts is unreasonable only when it can be said that reasonable jurists considering the question would be of one view that the state court ruling was incorrect.  In other words, we can grant habeas relief only if a state court decision is so clearly incorrect that it would not be debatable among reasonable jurists."  Drinkard, 97 F.3d at 769.

As to questions of law, "a federal court may grant habeas relief only if it determines that a state court's decision rested on a legal determination that was contrary to . . . clearly established Federal law, as determined by the Supreme Court."  Id. at 768.

The Fifth Circuit also noted in Drinkard that the threshold question in habeas review under the amended statute is whether the claim raised by the petitioner was adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Id. at 766; 28 U.S.C. § 2254(e)(2).  In addition, the newly amended statute codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing

evidence" burden placed on a petitioner who attempts to overcome that presumption. Id.,
§ 2254(e)(1).

In this case, the State has conceded that Martin's petition is timely because his
post-conviction application proceedings properly tolled the AEDPA statute of limitations
after his direct appeals were completed.   Record Doc. No. 14, Memorandum in
Opposition to Application for Habeas Corpus at p. 7;  see 28 U.S.C. § 2244(d)(1) and
Flanagan v. Johnson, 154 F.3d 196 (5th Cir.1998) (timeliness).   The State argues,
however, that Martin failed to exhaust his state court remedies in a procedurally proper
manner.  Even if Martin failed properly to exhaust his state court remedies, however, this
court may nevertheless address the merits of a habeas corpus petition if the asserted
claims are without merit.  28 U.S.C. § 2254(b)(2).

(2)      Ineffective Assistance of Counsel Claims

(A)      Legal Standard: Strickland

Martin alleges that his trial counsel provided ineffective assistance in two respects:
first, when he failed to object to the reasonable doubt instruction given to the jury by the
trial court; second, when his trial counsel failed to obtain an independent evaluation of
Martin's drug usage to present at trial.  In the last decision on the issue, the state supreme
court concluded that Martin failed to establish that he received ineffective assistance of
counsel, specifically citing Strickland v. Washington, 466 U.S. 668 (1984).[23]

---

[23]   State v. Martin, 182 So.3d 958 (La. 2016).

The issue of ineffective assistance of counsel is a mixed question of law and fact. Clark v. Thaler, 673 F.3d 410, 416 (5th Cir. 2012); Woodfox v. Cain, 609 F.3d 774, 789 (5th Cir. 2010).  Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

The standard for judging performance of counsel was established by the United States Supreme Court in Strickland, 466 U.S. at 668, relied on by the state courts, in which the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice.  Strickland, 466 U.S. at 697.  The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-88.  Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.  Kimler, 167 F.3d at 893.  A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' . . . But it is not enough under

9

<u>Strickland</u>, 'that the errors had some conceivable effect on the outcome of the proceeding.'" (citation omitted) <u>Motley v. Collins</u>, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting <u>Strickland</u>, 466 U.S. at 693); <u>Harrington</u>, 562 U.S. at 112 (<u>Strickland</u> requires a "substantial" likelihood of a different result, not just "conceivable" one.)

On habeas review, the United States Supreme Court has clarified that, under <u>Strickland</u>, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." <u>Harrington</u>, 562 U.S. at 105. The <u>Harrington</u> Court went on to recognize the high level of deference owed to a state court's findings under <u>Strickland</u> in light of the AEDPA:

> The standards created by <u>Strickland</u> and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so. The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.

<u>Harrington</u>, 562 U.S. at 105.

Thus, scrutiny of counsel's performance under § 2254(d) is "doubly deferential." <u>Cullen</u>, 563 U.S. at 190 (quoting <u>Knowles</u>, 556 U.S. at 123). This court must therefore apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." <u>Strickland</u>, 466 U.S. at 690.

Federal habeas courts presume that litigation strategy is objectively reasonable unless clearly proven otherwise by the petitioner.  Id., 466 U.S. at 689; Geiger v. Cain, 540 F.3d 303, 309 (5th Cir. 2008); Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999). In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial.  Strickland, 466 U.S. at 689; Neal, 286 F.3d at 236-37; Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000), cert. denied, 531 U.S. 1167 (2001).  Tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance.  Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)).

(B)     Failure to Object to Reasonable Doubt Instruction

Martin alleges that the trial court gave a defective reasonable doubt jury instruction and that his counsel was ineffective for failing to object to it.  However, Martin's petition misrepresents the substance of the instruction actually given to the jury. The state court record establishes the falseness of Martin's claim in this regard.

To establish a constitutional error arising from the language of a jury charge, a petitioner must prove that the instructions, read as a whole, relieved the State of its burden to prove each element of the crime beyond a reasonable doubt in violation of the

principles set forth in <u>In re Winship</u>, 397 U.S. 358 (1970).  <u>See</u> <u>Francis v. Franklin</u>, 471 U.S. 307 (1985).  Even if the charge is erroneous, however, the Supreme Court has held that the error is subject to a harmless error analysis.  <u>California v. Roy</u>, 519 U.S. 2 (1996).  In <u>Roy</u>, the Supreme Court concluded that its decision in <u>Brecht v. Abrahamson</u>, 507 U.S. 619 (1993), articulated the appropriate legal standard for determining whether a trial error was harmless in a federal habeas challenge to a jury charge.  <u>Roy</u>, 519 U.S. at 6 (citing <u>O'Neal v. McAninch</u>, 513 U.S. 432, 436 (1995)).  That standard provides that a federal habeas court may <u>not</u> grant relief on trial errors unless the petitioner demonstrates that there is a reasonable likelihood that the error "had a substantial and injurious effect or influence in determining the jury's verdict."  <u>Brecht</u>, 507 U.S. at 637-38; <u>O'Neal</u>, 513 U.S. at 436.

Before its decision in <u>Brecht</u>, the Supreme Court considered the standard of review applicable to jury charge challenges in <u>Estelle v. McGuire</u>, 502 U.S. 62, 72-73 (1991).  In <u>Estelle</u>, the Court held that the "reasonable likelihood" standard applies to jury charge error and disapproved of the "could have" or "would have" standard previously employed in <u>Cage v. Louisiana</u>, 498 U.S. 39 (1990) and <u>Yates v. Evatt</u>, 500 U.S. 391 (1991).  <u>Estelle</u>, 502 U.S. at 71 n.4 (reaffirming <u>Boyde v. California</u>, 494 U.S. 370, 380 (1990)).

The Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course.  <u>Victor v. Nebraska</u>, 511 U.S. 1, 5-6 (1994)

(citing <u>Hopt v. Utah</u>, 120 U.S. 430, 440-441 (1887)). The due process standard also does not require the use of any specific wording or formulation. All that is required is that the jury be instructed to find the defendant's guilt beyond a reasonable doubt. <u>Id</u>., 511 U.S. at 5.

Martin alleges that the state trial court gave the jury the instruction he sets out at Record Doc. No. 1 (Petitioner's Memorandum in Support) at p. 8. This allegation is false. The state trial court actually gave the following jury instruction concerning reasonable doubt:[24]

> A person accused of a crime is presumed by law to be innocent until each element of the crime, necessary to constitute guilt, is proven beyond a reasonable doubt. It is the duty of the jury in considering the evidence to apply the law as given by the court to that evidence, and it is your duty, if not convinced of the guilt of the defendant beyond a reasonable doubt, to find him not guilty.
>
> While the State must prove guilt beyond a reasonable doubt, it does not have to prove guilt beyond all possible doubt. Reasonable doubt is doubt based on reason and common sense and is present when, after you have carefully considered all the evidence, you cannot say that you are firmly convinced of the truth of the charge.[25]

The jury instruction that Martin erroneously alleges was given at trial is a quote of the jury instruction disapproved by the Supreme Court in <u>Cage</u>. The jury instruction <u>actually</u> given by the state trial court at Martin's trial does <u>not</u> employ any of the

---

[24] St. Rec. Vol. 1, p. 56; Vol. 2, pp. 341-49.

[25] Jury Instructions, State Court Record Vol. 1, pp. 55-63; Vol. 2, pp. 341-349.

problematic phraseology previously addressed by the Supreme Court, such as "moral certainty," "grave uncertainty" or "substantial doubt." <u>Cage</u>, 498 U.S. at 39.

Thus, Martin has not established that the reasonable doubt charge given by the state trial court was unconstitutional or erroneous in any way. Without proof of a trial error, his claim of ineffective assistance of counsel for failure to object to it has no basis in fact. Martin alleges that counsel was ineffective in failing to object to the state trial court's reasonable doubt jury charge. As discussed above, the reasonable doubt jury charge given at his trial was not unconstitutional or violative of Supreme Court law. Counsel's failure to make a frivolous or baseless objection is not deficient performance falling below an objective level of reasonableness.

Martin's counsel was not obliged to enter an objection to the reasonable doubt jury instruction because it was not contrary to law. <u>See</u> <u>Clark v. Thaler</u>, 673 F.3d 410, 429 (5th Cir. 2012), <u>cert. denied</u>, 133 S. Ct. 179 (2012) ("failure to assert a meritless objection cannot be grounds for a finding of deficient performance") (<u>quoting</u> <u>Emery v. Johnson</u>, 139 F.3d 191, 198 (5th Cir. 1997); <u>Wood v. Quarterman</u>, 503 F.3d 408, 413 (5th Cir. 2007) ("'[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite.'") (quoting <u>Clark v. Collins</u>, 19 F.3d 959, 966 (5th Cir. 1994)); <u>Green v. Johnson</u>, 160 F.3d 1029, 1037 (5th Cir. 1998) (failure to make a frivolous objection is not deficient performance below an objective level of reasonableness). Based on this record, Martin has not demonstrated that counsel's failure to object to the reasonable

14

doubt jury instruction was deficient performance or prejudicial to the defense.  He is not entitled to federal habeas corpus relief on this claim.

(C)      Failure to Obtain Independent Drug Use Evaluation

Martin also argues that his counsel was ineffective in failing to obtain an independent expert's evaluation of his drug usage.  Martin suggests that such an evaluation would have indicated that the cocaine in his possession was for his personal use, not for distribution.  The thrust of Martin's claim is that his counsel should have hired an expert, because a "defense expert witness' testimony/opinion" would have impeached the State's expert's testimony that the amount and manner of packaging of the cocaine found in Martin's possession was consistent with distribution, not personal use.

The law, however, is well settled that an indigent defendant does not have an automatic right to expert assistance, even upon demand.  Yohey v. Collins, 985 F.2d 222, 227 (5th Cir. 1993).  Rather, he must "establish a reasonable probability that the requested experts would have been of assistance to the defense and that denial of such expert assistance resulted in a fundamentally unfair trial."  Id.; Griffith v. Quarterman, 196 F. App'x 237, 243 (5th Cir. 2006); see also, Lockhart v. Fretwell, 506 U.S. 364, 372 (1993) (citing Strickland, 466 U.S. at 687).  Martin has made no showing that the testimony of an expert would have altered the trial or established that a different outcome would have occurred if counsel had obtained an expert.

On federal habeas corpus review, "'[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'" Graves v. Cockrell, 351 F.3d 143, 156 (5th Cir. 2003) (quoting Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978)); Bray v. Quarterman, 265 F. App'x 296, 298 (5th Cir. 2008).   To prevail on such a claim, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.   Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009) (citing Bray, 265 F. App'x at 298).   The Fifth Circuit has "required this showing for claims regarding uncalled lay and expert witnesses alike."   Day, 566 F.3d at 538 (citing Evans, 285 F.3d at 377-78) (emphasis added).   The Fifth Circuit has "clarified that the seemingly technical requirements of affirmatively showing availability and willingness to testify '[are] not a matter of formalism.'"   Hooks v. Thaler, 394 F. App'x 79, 83 (5th Cir. 2010) (quoting Woodfox, 609 F.3d at 808).   Instead, the Fifth Circuit requires the showing "as part of the burden of proving that trial counsel could have found and presented a favorable expert."   Id. at 83 (citation omitted).

Martin has not met the foregoing requirements necessary successfully to assert such a claim.   He has not expressly identified any expert.   His explanation of how the proposed expert testimony might have been favorable to his defense is vague and

conclusory. He has wholly failed to establish any deficient or prejudicial action by his trial counsel in this regard and is not entitled to relief on this claim.

Martin's arguments on this point are wholly speculative. He has identified no actual evidence to contradict the trial evidence or the testimony of the State's expert, Lt. Jewell, that the cocaine found in Martin's possession was consistent with distribution, not personal use. Defense counsel in fact attempted to raise doubt as to the veracity of Lt. Jewell's testimony through cross-examination, challenging both his expertise and his lack of first-hand knowledge of the defendant, the circumstances of his arrest and apprehension and his lack of participation in the underlying investigation.[26] "[A] decision to attack the state's expert witnesses on cross-examination rather than calling additional experts can be a part of a reasonable trial strategy." Bower v. Quarterman, 497 F.3d 459, 467 (5th Cir. 2007).

Martin has presented no proof beyond his own speculation that an expert witness was needed or could have offered any specific support to his defense. The fact that his defense was not successful and he was convicted does not mean that counsel's actions were deficient. See Martinez, 99 F. App'x at 543. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Strickland, 466 U.S. at 689 (citations omitted). Martin is not entitled to federal habeas corpus relief on this claim.

---

[26] St. Rec. Vol. 2 at pp. 466-70; 475.

17

## RECOMMENDATION

For all of the foregoing reasons, Martin's petition for habeas corpus relief is without merit.  Thus, **IT IS RECOMMENDED** that Martin's petition for habeas corpus relief under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[27]

New Orleans, Louisiana, this _____23rd_____ day of January, 2017.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[27] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.